**HELMER • FRIEDMAN, LLP**
Andrew H. Friedman, P.C. (S.B. #153166)
723 Ocean Front Walk
Venice, California 90291
Telephone: (310) 396-7714 • Facsimile: (310) 396-9215
E-Mail: afriedman@helmerfriedman.com

**THE COWAN LAW FIRM**
Jeffrey W. Cowan (S.B. # 157474)
1541 Ocean Avenue, Suite 200
Santa Monica, CA 90401
Telephone: (310) 394-1420 • Facsimile: (310) 394-1430
E-Mail: jeffrey@cowan-law.com

Attorneys for **Plaintiffs/Class Members**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| JOHN JOSEPH SAINT JOHN, JULIO CEASAR FLORES, ANTONIO AGUILAR, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>TATITLEK SUPPORT SERVICES, INC., a corporation, TATITLEK TRAINING SERVICES, INC., a corporation, TATITLEK/FORCE PREPAREDNESS TRAINING SERVICES, INC., a corporation, and DOES 2 through 75, inclusive,<br><br>    Defendants. | Case No. ED-CV08-1909-JZ (RZx)<br><br>*[Assigned to the Honorable Jack Zouhary]*<br><br>**Plaintiff's Memorandum of Points and Authorities In Support of Their *Unopposed* Motion for Final Approval of: (1) Attorneys' Fees and Costs; and (2) Class Representative Service Payments**<br><br>Date: October 21, 2011<br>Time: 10:30 a.m.<br>Judge: The Hon. Jack Zouhary<br>Courtroom: TBD |

1

**I.      INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**II.     FACTUAL AND PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . **2**

    A.   Plaintiffs and Their Counsel Conducted Extensive Investigation And Legal and Factual Analysis Before Filing The Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   Plaintiffs Tried To Settle Their Claims At The Beginning Of The Litigation, Before Incurring Significant Attorneys' Fees and Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.   After Defendants Refused To Discuss An Early Settlement, the Parties Actively Litigated the Case and Engaged in Substantial Discovery and Law and Motion Practice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D.   The Parties Engaged In Serious, Informed, and Arm's Length Settlement Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**III.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

    A.   The Attorneys' Fees Request Satisfies The Ninth Circuit's 25% Benchmark Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   The Attorneys' Fees Request Also Satisfies The Ninth Circuit's Lodestar Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.   The Requested Fee Are Reasonable Because They Are *Less Than* Class Counsel's Hourly Lodestar . . . . . . . . . . 8

            a.   The Total Number Of Hours Worked Is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            b.   The Hourly Rates Claimed Are Reasonable  . . . . . . . 9

        2.   The Requested Fees Are Reasonable Because They Are Significantly Less Than Class Counsel's Hourly Lodestar Plus Multiplier . . . . . . . . . . . . . . . . . . . . . 10

            a.   The Time And Labor Involved In Litigating This Case Was Extensive And Meant That Class Counsel Was Precluded From Other Employment . . . . . . . . . . . . . . . . . . . . . . . . . 11

\\\
\\\

       b.   The Issues In This Case Were Novel And Meant That Class Counsel Took A Significant Risk In Litigating It Because They Were Doing So On A Contingency . . . . . . . . 11

       c.   The Experience, Reputation, And Ability Of Class Counsel Militate In Favor Of A Multiplier . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.   **THE COURT SHOULD APPROVE THE REQUESTED COSTS** . . **12**

V.   **THE COURT SHOULD APPROVE THE REQUESTED CLASS REPRESENTATIVE INCENTIVE PAYMENTS** . . . . . . . . . . . . . . . . **13**

  A.   The Class Representatives Faced Risk (Financial and Otherwise) In Commencing Suit. . . . . . . . . . . . . . . . . . . . . . 14

  B.   The Class Representatives Faced Personal Difficulties and Spent Significant Time And Effort Over The Course Of More Than Two Years As A Result Of This Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

  C.   The Class Representatives Will Not Receive Much Personal Benefit As A Result Of The Litigation. . . . . . . . . . . . . 15

VI.   **THE COURT SHOULD APPROVE THE REQUESTED PAYMENT TO 3RD PARTY CLASS ACTION ADMINISTRATOR GILARDI** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

VII.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' Memorandum of Points and Authorities In Support of Motion for Final Approval of Attorneys' Fees, Costs & Enhancements/Service Payments

## Table of Authorities

**Case Authorities**

Chalmers v. City of Los Angeles,
     796 F.2d 1205 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cudle v. Bristow Optical Co.,
     224 F.3d 1014 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ferland v. Conrad Credit Corp.,
     244 F.3d 1145 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fischel v. Equitable Life Assur. Society of U.S.,
     307 F.3d 997 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Friend v. Kolodzieckzak,
     72 F.3d 1386 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hanlon v. Chrysler Corp.,
     150 F.3d 1011, 1029 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Bluetooth Headset Products Liability Litigation,
     --- F.3d ----, 2011 WL 3632604 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . 5, 6

In re Prudential Ins. Co.,
     148 F.3d 283, 341 (3d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Washington Public Power Supply System Securities,
     19 F.3d 1291 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Kerr v. Screen Extras Guild, Inc.,
     526 F.2d 67 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Moreno v. City of Sacramento,
     534 F.3d 1106 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,
     478 U.S. 546 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Six (6) Mexican Workers v. Arizona Citrus Growers,
     904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

\\\

Plaintiffs' Memorandum of Points and Authorities In Support of Motion for Final Approval of Attorneys' Fees, Costs & Enhancements/Service Payments

Staton v. Boeing Co.,

    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Van Vranken v. Atlantic Richfield Co.,

    901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

Vincent v. Hughes Air West,

    557 F.2d 759 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Wright v. Linkus Enterprises, Inc.,

    --- F.R.D. ----, 2009 WL 2365436 (E.D.Cal. 2009) . . . . . . . . . . . . . . . . 12

<u>Other Authorities</u>

A. Conte & H. Newberg, *Newberg On Class Actions*

    § 14:5 (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

D. Herr, *Annotated Manual for Complex Litigation*

    § 14.122, p. 256 (4th ed.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D. Herr, *Annotated Manual for Complex Litigation*

    § 14.122, p. 254-55 (4th ed.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Manual for Complex Litig.

    § 21.62 n. 971 (4th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Plaintiffs' Memorandum of Points and Authorities In Support of Motion for Final Approval of Attorneys'
Fees, Costs & Enhancements/Service Payments

## I.    **INTRODUCTION.**

With the assistance of the Court, Counsel for Named Plaintiffs/Class Representatives – John Joseph Saint John, Julio Cesar Flores, and Antonio Aguilar ("Plaintiffs" or "Class Representatives") – and the proposed class ("Class Counsel"), have negotiated and secured a settlement of $2,400,000.00 to resolve various wage claims against Defendant Tatitlek Support Services, Inc. ("Defendant").  [See Joint Stipulation and Settlement Agreement of Class Action Claims (the "Agreement"), ECF # 99].  As permitted under the parties' Agreement and pursuant to the Court's Order preliminarily approving that Agreement, [see ECF # 101], Plaintiffs now make this *unopposed* motion for final approval of:

(1)    Attorneys' fees in the amount of Six Hundred Thousand Dollars ($600,000.00) (such amount represents a reduction below the hourly lodestar fees incurred thus far by Class Counsel);

(2)    Costs incurred during the litigation in the amount of 25,352.20; and

(3)    Service Payments to the Class Representatives in the amount of Eighty Five Thousand Dollars ($85,000.00) to be paid as follows: $35,000.00 to Antonio Aguilar and $25,000 each to Julio Flores and John Saint John.

As explained in more detail below, Class Counsel's attorneys' fees request is "fair, reasonable, and adequate" because it satisfies each of the two different Ninth Circuit tests for evaluating the fairness, reasonableness, and adequacy of attorneys' fees payments in class action cases.  In this regard, the Ninth Circuit has held that district courts have the discretion to use two separate methods for calculating "fair, reasonable, and adequate" attorneys' fees awards – (1) a 25% benchmark method; and/or (2) the traditional lodestar method. Here, the requested attorneys' fees award satisfies both tests.  First, the attorneys' fees requested by Class Counsel are at the 25% benchmark recognized by the Ninth Circuit. Second, the attorneys' fees requested by Class Counsel are ***lower than*** Class Counsel's lodestar.  Hence, under either Ninth Circuit test, the attorneys'

1

Plaintiffs' Memorandum of Points and Authorities In Support of Motion for Final Approval of Attorneys'
Fees, Costs & Enhancements/Service Payments

fees requested by Class Counsel are "fair, reasonable, and adequate."

As explained in more detail below, Class Counsel's request for the reimbursement of the costs that they have occurred in litigating this case is "fair, reasonable, and adequate" because the amount requested is less than or equal to the costs reasonably and actually incurred by Class Counsel.

As also explained in more detail below, Plaintiffs' request for Service Payments to the Class Representatives should be approved as it falls within the discretion that courts have to award reasonable service payments to class representatives and is "fair, reasonable, and adequate" given the amount of time they have expended on the prosecution of this action.

## II.   FACTUAL AND PROCEDURAL HISTORY.

This is *not* a case in which Class Counsel and the Class Representatives merely filed a lawsuit, engaged in minimal discovery, and then reached an agreement to resolve the matter.  See Declaration of Andrew H. Friedman ("Friedman Decl."), ¶ 4, p. 2, line 22 to ¶ 12, p. 4, line 25; Declaration of Jeffrey W. Cowan ("Cowan Decl."), ¶ 4-12, p. 1, line 21 to p. 3, line 27.  To the contrary and as explained below and in the accompanying Friedman and Cowan declarations, when their initial efforts to minimize fees and costs failed to result in settlement discussions, Class Counsel and the Class Representatives engaged in protracted and heavily contested litigation for more than 2 years.  Id.

### A.   **Plaintiffs and Their Counsel Conducted Extensive Investigation And Legal and Factual Analysis Before Filing The Litigation.**

Before filing this lawsuit, the Plaintiffs spent considerable time extensively meeting and conferring with their counsel, gathering and organizing documentation for their counsel to review, and locating witnesses for their counsel to interview.  See Declaration of Antonio Aguilar ("Aguilar Decl."), ¶¶ 7-8, p. 2, line 12 to p. 3, line 1;  Declaration of Julio Flores ("Flores Decl."), ¶7, p. 2, lines 1 to ¶ 8, p. 2, line 13, and Declaration of John Saint John ("Saint John

2

Decl."), ¶ 6, p.2, lines 1 to 7.  See also Friedman Decl., ¶ 4, p. 2, line 22 to p. 3, line 3; Cowan Decl., ¶ 4-5, p. 1, line 21 to p. 2, line 5.   Likewise, Plaintiffs' counsel spent a significant amount of time reviewing Plaintiffs' documentation and factual allegations, interviewing witnesses, and researching their claims.  See Friedman Decl., ¶ 4, p. 2, line 22 to p. 3, line 3; Cowan Decl., ¶ 4-5, p. 1, line 21 to p. 2, line 5.   Together, Plaintiffs and their counsel then jointly spent a considerable amount of time preparing and finalizing Plaintiffs' original class action complaint. Id.

**B.**   **Plaintiffs Tried To Settle Their Claims At The Beginning Of The Litigation, Before Incurring Significant Attorneys' Fees and Costs.**

Counsel for Plaintiffs initially tried to resolve the litigation at the inception of the case by suggesting, in their very first communications with opposing counsel and then again at the parties' Rule 26 meeting, that the parties discuss settlement and/or participate in an early mediation.  See Friedman Decl., ¶ 10, p. 4, lines 4 to 9; Cowan Decl., ¶ 11, p. 3, lines 12 to 17.   Unfortunately, Defendants were not interested in an early mediation and, instead, wanted to first file a motion for summary judgment. Id.

**C.**   **After Defendants Refused To Discuss An Early Settlement, the Parties Actively Litigated the Case and Engaged in Substantial Discovery and Law and Motion Practice.**

The Parties have conducted considerable motion practice, including litigation over: (1) a motion to file a second amended complaint [ECF # 74]; and (2) a comprehensive motion for summary judgment raising significant and complex Constitutional and statutory defenses [ECF ## 39 - 46], detailed opposition papers [ECF ## 56 - 69], reply papers [ECF ## 84], and evidentiary objections [ECF ## 86 - 95].

The Parties have also conducted a significant amount of investigation and discovery into the facts and intensive research into the law during the litigation.

3

<u>See</u> Friedman Decl., ¶ 5-7, p. 3, line 4 to p. 4, line 3; Cowan Decl., ¶ 6-10, p. 2, line 6 to p. 3, line 11.  Such discovery and investigation includes: the propounding of extensive written discovery by both sides; both sides producing thousands of documents; meet and confer conferences regarding inadequate discovery responses; taking depositions throughout the Country including: (1) Pasadena, California; (2) Venice, California, (3) Twentynine Palms, California; (4) Anchorage, Alaska, (5) Washington D.C., and (6) Quantico, Virginia. In addition, Class Counsel engaged in both telephonic and in-person interviews with multiple putative Class Members and other potential witnesses some of which required considerable travel time by counsel.  <u>Id</u>.  Such discovery and investigation also includes the review and analysis of additional information that was disclosed in the course of the parties' full day mediation with Mr. Rudy and half day settlement conference with the Honorable Jack Zouhary.  <u>Id</u>.  The parties' intensive research included, in addition to analyzing the issues raised by Defendants' motion for summary judgment, delving into Defendants' federal enclave argument.

### D.  <u>The Parties Engaged In Serious, Informed, and Arm's Length Settlement Negotiations</u>.

Counsel for the Parties engaged in extensive discussions about the strengths and weaknesses of the claims and defenses.  <u>See</u> Friedman Decl., ¶ 11, p. 4, lines 10 to 18; Cowan Decl., ¶ 12 p. 3, lines 18 to 27.  In May 2010, for example, during the depositions that took place in Alaska, counsel for the parties spent one evening discussing their respective views of the case and how their respective factual positions and legal arguments might shape any potential settlement.  <u>Id</u>.  Then, in June 2010, the parties engaged in a full day mediation with an extremely experienced and well-respected mediator – Mark Rudy. Although the mediation failed, the mediator engaged in sustained and lengthy follow-up discussions. <u>Id</u>.  Those follow-up discussions also failed to result in a settlement.  <u>Id</u>.  Ultimately, however, the parties attended a half day settlement

Plaintiffs' Memorandum of Points and Authorities In Support of Motion for Final Approval of Attorneys' Fees, Costs & Enhancements/Service Payments

conference which, with the invaluable assistance of the Court (the Honorable Jack Zouhary), caused a settlement that the Court has preliminarily approved. Id. See also ECF # 101.

## III.   **THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES.**

Subject to Court approval, the parties have agreed that Defendants will pay up to $600,000.00 from the Settlement Fund to Class Counsel as attorneys' fees. See Agreement [ECF # 99], p. 14, line 14 – p. 15, line 2. "The award of attorneys' fees in a class action settlement is often justified by the common fund or statutory fee-shifting exceptions to the American Rule, and sometimes by both." *In re Bluetooth Headset Products Liability Litigation*, --- F.3d ----, 2011 WL 3632604, * 4 (9th Cir. 2011). Here, both rationales justify the award of attorneys' fees – *i.e.,* the Plaintiffs claims are brought under statutes authorizing attorneys' fees and the settlement calls for the creation of a common fund. Moreover, the requested award of attorneys' fees is "fair, reasonable, and adequate" because it satisfies each of the two different Ninth Circuit tests for evaluating the fairness, reasonableness, and adequacy of attorneys' fees payments in class action cases. In this regard, the Ninth Circuit has held that district courts have the discretion to use two separate methods for calculating "fair, reasonable, and adequate" attorneys' fees awards in class action cases – (1) a 25% benchmark method; and/or (2) the traditional lodestar method. [1]

---

[1] *See In re Bluetooth Headset Products Liability Litigation,* --- F.3d ----, 2011 WL 3632604, * 4 (9th Cir. 2011)("We have approved two different methods for calculating a reasonable attorneys' fee depending on the circumstances . . . The "lodestar method" is appropriate in class actions brought under fee-shifting statutes . . . Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)("This court has affirmed the use of two separate methods for determining attorneys fees, depending on the case. In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method . . . In employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation . . ."); *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (suggesting that where an award of attorneys' fees cases is expressly authorized by statute and when the 25% benchmark percentage recovery would be too

5

---

Here, the proposed attorneys' fees ($600,000.00) satisfy both tests.

## A.  **The Attorneys' Fees Request Satisfies The Ninth Circuit's 25% Benchmark Test.**

The attorneys' fees award requested by Class Counsel is at the 25% benchmark established by the Ninth Circuit. [2]  Hence, the proposed attorneys' fees are presumed to be "fair, reasonable, and adequate."  The Ninth Circuit has, however, suggested that the district courts "cross-check" an attorneys' fees calculation to ensure that it is not unreasonable.  *See In re Bluetooth Headset Products Liability Litigation*, --- F.3d ----, 2011 WL 3632604, * 4 (9th Cir. 2011)("we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method."). Here, such a "cross-check" confirms that the proposed attorneys' fees are "fair, reasonable, and adequate."

## B.  **The Attorneys' Fees Request Also Satisfies The Ninth Circuit's Lodestar Test.**

The attorneys' fees award requested by Class Counsel is also "fair, reasonable, and adequate" under the lodestar test.  Pursuant to the lodestar test,

---

small in light of the hours devoted to the case, the 25% benchmark method should be replaced by a lodestar calculation).

[2] *See In re Bluetooth Headset Products Liability Litigation, --- F.3d ----, 2011 WL 3632604, * 4 (9th Cir. 2011)("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.*"); Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998)("The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee. This circuit has established 25% of the common fund as a benchmark award for attorney fees. ")(citation omitted); *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent "benchmark" in percentage-of-the-fund cases that can be "adjusted upward or downward to account for any unusual circumstances involved in [the] case.") *quoting Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, 2009 WL 3562871, * 2 (N.D. Cal. 2009)("The 'benchmark' for attorneys' fees in common fund class actions is 25% of the common fund."); *Gribble v. Cool Transports Inc.*, 2008 WL 5281665, * 11 (C.D. Cal. 2008)("In the Ninth Circuit, the 'benchmark' for attorneys' fees in common-fund class actions is 25% of the common fund.").

Plaintiffs' Memorandum of Points and Authorities In Support of Motion for Final Approval of Attorneys' Fees, Costs & Enhancements/Service Payments

the Court "must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). *See also In re Bluetooth Headset Products Liability Litigation*, --- F.3d ----, 2011 WL 3632604, * 4 (9th Cir. 2011); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Friend v. Kolodzieckzak*, 72 F.3d 1386 (9th Cir. 1995); D. Herr, *Annotated Manual for Complex Litigation* § 14.122, p. 254-55 (4th ed.2008)("The lodestar calculation begins with multiplying the number of hours reasonably expended by a reasonable hourly rate.").

Once the lodestar is calculated, courts routinely enhance the lodestar with a "multiplier" to compensate attorneys for, *inter alia*, (1) the time and labor involved, (2) the difficulty and novelty of the issues, (3) the necessary legal skill required, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) the contingent nature of the fee, (7) the time limitations imposed by circumstances or the client, (8) the amount in controversy and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) *citing Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001). *See also Cudle v. Bristow Optical Co.*, 224 F.3d 1014, 1029 (9th Cir. 2000); D. Herr, *Annotated Manual for Complex Litigation* § 14.122, p. 256 (4th ed.2008)("The lodestar figure may be adjusted, either upward or downward, to account for several factors including, inter alia, the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, the risk on nonpayment, and any delay in payment."); 4 A. Conte & H. Newberg, *Newberg On Class Actions* § 14:5 (4th ed. 2002)("courts could increase

7

or decrease the lodestar according to a number of factors, including the risk of loss and the quality of the attorneys' work").

The Ninth Circuit has, in fact, specifically noted that a multiplier based on the risk of contingency is appropriate to "reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Public Power Supply System Securities,*19 F.3d 1291, 1299 (9th Cir. 1994) (reversing a fee award because a multiplier was not applied).

Here, as explained below, all of the foregoing factors support a multiplier to Class Counsel's lodestar. Because the requested attorneys' fees ($600,000.00) is significantly lower than their lodestar, not to mention their lodestar plus multiplier, the Court should find that their requested attorneys' fees are "fair, reasonable, and adequate."

### 1.   The Requested Fee Are Reasonable Because They Are *Less Than* Class Counsel's Hourly Lodestar.

Class counsel's lodestar is at least $672,500.00.[3]  See Friedman Decl., ¶ 12-13 p. 4, line 19 to  ¶ 5, line 4; Cowan Decl."), ¶ 13-14, p. 3, line 24 to p. 4, line 10. As outlined below, this figure is based on the time reasonably expended by class counsel multiplied by their hourly rates:

| Attorney | Attorneys' Hours & Hourly Rate | Attorneys' Fees |
|---|---|---|
| Andrew Friedman | 750+ hours at $550.00 an hour | $412,500.00 |
| Jeffrey Cowan | 575+ hours at $400.00 an hour | $230,000.00 |
| | | $642,500.00 |

In addition, Mr. Friedman's partner Gregory D. Helmer ($550/hour) and former associate Melanie Partow ($400/hour) collectively spent more than 65 hours

---

[3] This calculation is based on Class Counsel's expenditure of time through early August 2011 and does not include any of the many hours that have been performed finalizing these papers and that will likely have to be performed following the filing. See Friedman Decl., ¶ 12, p. 4, lines 17 to 25; Cowan Decl., ¶ 13, p. 3, line 28 to p. 4, line 5.

8

working on this lawsuit.[4]  The value of their time exceeds $30,000.00.

As a result, the total value of counsel's time *to date* exceeds $672,500.00. Because Class Counsel's requested fee of $600,000.00 is *less than* Class Counsel's lodestar and such "cross-check" calculation validates the 25% benchmark test, Plaintiffs respectfully submit that Class Counsel's fee request is reasonable and that the Court should approve it.

### a.  The Total Number Of Hours Worked Is Reasonable.

The work performed by Andrew H. Friedman, Jeffrey W. Cowan, Gregory D. Helmer, and Melanie Partow is described in the Declarations of Andrew H. Friedman and Jeffrey W. Cowan.  See Friedman Decl., ¶ 4-11, p. 2, line 22 to p. 4, line 18; Cowan Decl., ¶ 4, p. 1, line 21 to p. 3, line 27.  Given the difficult legal and factual issues raised in the litigation as evidenced by the extensive discovery and law and motion work (*see, e.g.,* Plaintiffs' summary judgment opposition papers), the complexity of the issues raised in the litigation of this matter, and the sheer amount of time during which the case was litigated (more than 2 years), the total time expended was very reasonable.  Id.  Class Counsel maintained detailed contemporaneously entered time records throughout this litigation.  If the Court so wishes, Class Counsel will provide their time records for an *in camera* review. See Friedman Decl., ¶ 12, p. 4, lines 19 to 25; Cowan Decl., ¶ 13, p. 4, lines 5 to 9.

### b.  The Hourly Rates Claimed Are Reasonable.

In order to determine whether an attorney's claimed hourly rate is reasonable, the Court should consider the "geographic area and the attorney's experience, reputation, practice, qualifications, and customary charge.  The rate should reflect what the attorney would normally command in the relevant market place."  D. Herr, *Annotated Manual for Complex Litigation* § 14.122, p. 255 (4th ed.2008).  *See also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th

---

[4] The Court may remember that Mr. Helmer participated in the November 2, 2010 mandatory settlement conference.  Mr. Helmer also attended the June 2010 mediation.

Cir.1986)(in determining reasonableness of hourly rate, courts look to the prevailing market rates in the relevant community for "similar work performed by attorneys of comparable skill, experience, and reputation.").

As indicated above, the hourly rates requested for Class Counsel in this action are as follows: Andrew H. Friedman at $550.00 per hour, Gregory D. Helmer at $550.00 per hour, Jeffrey Cowan at $400.00 an hour, and Melanie Partow at $400.00 an hour.  <u>See</u> Friedman Decl., ¶ 13, p. 4, line 26 to p. 5, line 4 and  ¶ 30-32, p. 13, lines 4-21.  The backgrounds of these attorneys and the reasonableness of their hourly fees are set forth in the Declarations of Andrew H. Friedman and Jeffrey W. Cowan which demonstrate that these hourly rates are well within the range for comparable attorneys of their skill and experience.  <u>See</u> Friedman Decl., ¶ 14-32, p. 5, line 5 to p. 13, line 20; Cowan Decl., ¶ 16-24, p. 4, line 18 to p. 6, line 2.

In addition, the hourly rates for Andrew H. Friedman, Gregory D. Helmer and Melanie Partow are also reasonable because they were recently approved by the Honorable Judge Christina A. Snyder, United States District Court for the Central District of California, in a wage and hour class action -- *Lodge and Lertzman v. U.S. Remodelers, Inc.*, CV07-05409 CAS (AJWx).  <u>See</u> Friedman Decl., ¶ 27, p. 11, lines 16 to 22.

        **2.**    **<u>The Requested Fees Are Reasonable Because They Are Significantly Less Than Class Counsel's Hourly Lodestar Plus Multiplier</u>.**

Typically, Class Counsel receives a multiplier in complex litigation with novel legal theories – as in the case here.   Such multipliers typically range from 1.5 to 2.5.[5]   Here, however, despite the complexity of the litigation and the risks

---

[5] A multiplier of between 1.5. and 2.5 falls well within the range typically awarded. *See In re Prudential Ins. Co.*, 148 F.3d 283, 341 (3d Cir.1998) (recognizing that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied") <u>quoting</u> 3 Newberg § 14.03 at 14-5.

Plaintiffs' Memorandum of Points and Authorities In Support of Motion for Final Approval of Attorneys' Fees, Costs & Enhancements/Service Payments

assumed, Class Counsel has <u>not</u> requested a multiplier (which with the Lodestar would increase the fee request at a 1.5 rate to $1,008.750.00; or to $1,345,000.00 at a 2.0 rate).   Because the $600,000.00 fee request is significantly less than Class Counsel's lodestar plus multiplier, Class Counsel's fee request is reasonable and the Court should approve it.  <u>Id</u>.

### a. <u>The Time And Labor Involved In Litigating This Case Was Extensive And Meant That Class Counsel Was Precluded From Other Employment.</u>

As indicated above and as explained in the Friedman and Cowan Declarations, Class Counsel worked on this case for over two years and spent more than 1,310 hours of attorney time.  *See* Friedman Decl., ¶ 12-13, p. 4, line 19 to p. 5, line 4; Cowan Decl., ¶ 4-12 p. 1, lines 21 to p. 3, line 27.   As a result of the time and labor required on this case, Class Counsel was precluded from taking on other matters.  <u>Id</u>.at ¶ 31, p. 8, lines 13-14

### b. <u>The Issues In This Case Were Novel And Meant That Class Counsel Took A Significant Risk In Litigating It Because They Were Doing So On A Contingency</u>.

Class Counsel took this case on a contingency and advanced all of the litigation costs.  <u>See</u> Friedman Decl., ¶ 13, p. 5, lines 3 to 4; Cowan Decl., ¶ 15, p. 4, line16, and  ¶ 25, p. 6, lines 4 to 20.   Hence, Class Counsel took a significant risk litigating this case because it had to expend significant amounts of time and incur substantial expenses (more than $25,000.00 to date) with no guaranty of recovery. <u>Id</u>.  This risk was compounded by the novel legal issues presented in this case which included defenses based on: (a) the Supremacy Clause and the fundamental principles of Article 1, Section 8 of the United States Constitution preempt Plaintiffs' claims; (b) the governmental contractor defense bars Plaintiffs' claims; (c) the Service Contract Act and/or the Contract Work Hours And Safety Standards Act bars Plaintiffs' claims; and (d) the federal enclave defense.

### c.   The Experience, Reputation, And Ability Of Class Counsel Militate In Favor Of A Multiplier.

This Action has been litigated by experienced and competent counsel who performed extremely high quality work on behalf of the Class. As fully detailed in the accompanying Friedman and Cowan Declarations, Class Counsel's efforts included, but were not limited to: (i) investigating Plaintiffs' claims (including interviewing witnesses, reviewing documents, and conducting legal research) and drafting the complaints; (ii) drafting, responding to and conducting both merits and class discovery, which included analyzing thousands of pages of documents, and defending and taking multiple depositions in multiple locations including (1) Pasadena, California; (2) Venice, California; (3) Twentynine Palms, California; (4) Anchorage, Alaska, (5) Washington D.C., and (6) Quantico, Virginia; (iii) opposing a complex motion for summary judgment that raised novel Constitutional defenses; and (iv) negotiating the settlement, which involved conducting a mediation, follow-up negotiations (via in-person meetings, telephone conferences, and e-mail), and a Settlement Conference.  See Friedman Decl., ¶ 4-11, p.2, line 4 to p. 4, line 18; Cowan Decl., ¶ 4-12, p. 1, line 21 to p. 3, line 27.   Hence, on the basis of the record in this litigation, it is clear that Class Counsel is highly skilled in the prosecution of class action litigation and performed very high quality work on behalf of the Class in this Action.

### IV.   THE COURT SHOULD APPROVE THE REQUESTED COSTS.

Typically, class counsel is entitled to reimbursement of all reasonable out-of pocket expenses in prosecution of claims and in obtaining settlement. *See Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977).  Here, Plaintiffs further request, and Defendants have agreed, that, in addition to their reasonable attorneys' fees, the Court approve reimbursement of Plaintiffs' reasonable expenses. See Agreement [ECF # 99], ¶ 31(iv), p. 11, lines 11-14; ¶ 34, p. 14, line

12

14 – p. 15, line 2.  In that regard, Class Counsel has reasonably incurred

$25,352.20 in expenses in connection with this Action.  See Friedman Decl., ¶ 34,

p. 14, lines 23 to p. 15, line 7; Cowan Decl., ¶ 25, p. 6, lines 4 to 20.   The

expenses incurred are itemized in the chart which is Exhibit "A" to the Friedman

Declaration and Exhibits "1 & 2" to the Cowan Declaration. All of these expenses

were reasonably incurred in the prosecution of this case. Id.


## V.    THE COURT SHOULD APPROVE THE REQUESTED CLASS REPRESENTATIVE INCENTIVE PAYMENTS.

The Plaintiffs and Class Counsel request, and Defendants do not to oppose,

Service Payments to the Class Representatives in the amount of Eighty Five

Thousand Dollars ($85,000.00) to be paid as follows: $35,000.00 to Antonio

Aguilar and $25,000.00 each to Julio Flores and John Saint John as enhancement

payments in recognition of their service to, and efforts on behalf of, the Class.

See Friedman Decl.,  ¶ 35, p. 15, lines 8 to 25; Cowan Decl., ¶ 26, p. 6, lines 22 to

25.   See Agreement [ECF # 99], ¶ 8, p. 3, lines 19 – 25; ¶ 31(v), p. 11, lines 15 -

23.  These incentive awards are in addition to the relief they will be entitled to

under the terms of the Settlement.  See Agreement [ECF # 99], ¶ 31(v), p. 11,

lines 15 -23.

Courts have discretion to award a class representative a reasonable

incentive payment.  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).  See

also Manual for Complex Litig. § 21.62 n. 971 (4th ed. 2004) (incentive awards

may be "merited for time spent meeting with class members, monitoring cases, or

responding to discovery").

In determining whether to approve an incentive award, courts consider "(1)

the risk to the class representative in commencing suit, both financial and

otherwise; (2) the notoriety and personal difficulty encountered by the class

representative; (3) the amount of time and effort spent by the class representative;

(4) the duration of the litigation; and (5) the personal benefit (or lack thereof)

Plaintiffs' Memorandum of Points and Authorities In Support of Motion for Final Approval of Attorneys'
Fees, Costs & Enhancements/Service Payments

enjoyed by the class representative as a result of the litigation." *Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also Wright v. Linkus Enterprises, Inc.*, --- F.R.D. ----, 2009 WL 2365436, * 9 (E.D.Cal. 2009) (holding that in determining "the propriety of incentive awards to named plaintiffs, a district court should consider the actions protecting class interests, the benefit provided to the class based on those actions, and the amount of time and effort expended by the plaintiff.").

**A.** **The Class Representatives Faced Risk (Financial and Otherwise) In Commencing Suit.**

By participating in this litigation as named plaintiffs, Plaintiffs subjected themselves to the risk that they could be liable for Defendants' attorneys' fees and costs should Defendants prevail. *See* Defendant's Answer (ECF#15), p. 21, line 15 (seeking attorneys' fees and costs); Defendant's Answer To First Amended Complaint (ECF#53), p. 25, lines 5 – 6 (same).

In addition, by participating in this litigation, Plaintiffs exposed themselves to the risk of retaliation against by future employers who might not want to hire individuals perceived as being litigious. Indeed, the Fourth Circuit recently heightened this risk by holding that the Fair Labor Standards Act's anti-retaliation provision does ***not*** protect employees from retaliation by future employers. *See Dellinger v. Science Applications Intern. Corp.*, --- F.3d ----, 2011 WL 3528750, * 1 (4th Cir. 2011)("[W]e conclude that the FLSA gives an employee the right to sue only his or her current or former employer and that a prospective employee cannot sue a prospective employer for retaliation.").

Messrs. Flores and Aguilar also exposed themselves to the risk of retaliation by Tatitlek. Plaintiffs accepted these risks (and to some extent suffered them) for the benefit of the class. *See* Aguilar Decl., ¶6, p.1, line28 to ¶ 7, p. 2, lines 20; Flores Decl., ¶ 6, p. 1, line 27 to p. 2, line 1.

\\\

\\\

**B.** **The Class Representatives Faced Personal Difficulties and Spent Significant Time And Effort Over The Course Of More Than Two Years As A Result Of This Litigation**.

Before and then throughout the litigation, the Class Representatives spent a significant amount of time helping Class Counsel prosecute this Litigation. *See* Aguilar Decl., ¶8, p. 2, line 21 to ¶ 11, p. 4, line 14 (and Exhibit 1 thereto); Flores Decl., ¶ 7, p. 2, line 6 to ¶ 10, p. 3, line 20 (and Exhibit 1 thereto); and Saint John Decl., ¶ 6, p. 2, line 4 to ¶ 9, p. 3, line 19 (and Exhibit 1 thereto). *See also* Friedman Decl., ¶ 35, p. 15, lines 11 to 25; Cowan Decl., ¶ 4, p. 1, lines 21 to 27 and ¶ 26, p. 6, line 22 to p. 7, line 11.

In addition to meeting and conferring with Class Counsel (both telephonically, by e-mail, and in-person on numerous occasions) and providing Class Counsel with access to important documents and witnesses before the filing of the litigation, they have participated in discovery, including, among other things, helping Class Counsel to review documents produced by Defendants and helping to prepare Class Counsel for the depositions that were conducted in the case. *Id.* Moreover, the Class Representatives attended all of the depositions in California. *Id.* They also attended the mediation in San Francisco, were kept informed of the litigation and settlement negotiations as it developed, attended the Court's Mandatory Settlement Conference, and they were kept abreast of, and approved, the proposed Settlement Agreement. *Id.* This level of commitment for more than two years demanded substantial personal time numbering – hundreds of hours by each Class Representative – working on this case. *Id.*

**C.** **The Class Representatives Will Not Receive Much Personal Benefit As A Result Of The Litigation**.

The Class representatives have expended time and effort representing the interests of the class. Fundamental fairness dictates that they should receive some compensation above and beyond their individual recoveries as class members. Accordingly, because enhancements serve as premiums, in addition to any

15

claims-based recovery from the settlement, and promote the public policy of encouraging individuals to serve as class plaintiffs in representative lawsuits, the requested enhancements are fair and reasonable.

## VI.  THE COURT SHOULD APPROVE THE REQUESTED PAYMENT TO 3RD PARTY CLASS ACTION ADMINISTRATOR GILARDI

Plaintiffs also respectfully submit that the Court should award the forthcoming submitted fee of the class action administrator Gilardi & Co., LLC (up to a maximum of $55,000.00).  To date, Gilardi has performed all of the tasks it was retained to do (*see* the Declaration of Bernella Lenhart), and it was selected by Class Counsel on the basis of it not only having the lowest bid but also evidencing the greatest sophistication and the most likelihood of anticipating or solving problems in a way that would save the class money.  *See* Cowan Decl., ¶ 27, p. 7, lines 11-19; Friedman Decl., ¶ 36, p. 15, line 26 through p. 16, line 3.

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

16

## VII.  <u>CONCLUSION</u>.

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request – and Defendants do *not* oppose – that the Court grants their request for reasonable attorneys' fees in the amount of $600,000.00, costs in the amount of $25,352.20, payment to the class action administrator Gilardi of up to $55,000, and service payments to the Class Representatives in the amount of Eighty Five Thousand Dollars ($85,000.00) to be paid as follows: $35,000.00 to Antonio Aguilar and $25,000.00 each to Julio Flores and John Saint John as enhancement payments in recognition of their service to, and efforts on behalf of, the Class.

Respectfully submitted,

DATED: September 20, 2011          **HELMER • FRIEDMAN, LLP**
Gregory D. Helmer
Andrew H. Friedman, P.C.

*Andrew H. Friedman*

By:    Andrew H. Friedman
Attorneys for **Plaintiffs John Joseph Saint John, Julio Cesar Flores and Antonio Aguilar**

DATED: September 20, 2011          **THE COWAN LAW FIRM**

*Jeffrey W. Cowan*

By:    Jeffrey W. Cowan
Attorneys for **Plaintiffs John Joseph Saint John, Julio Cesar Flores and Antonio Aguilar**

Plaintiffs' Memorandum of Points and Authorities In Support of Motion for Final Approval of Attorneys' Fees, Costs & Enhancements/Service Payments